## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BILLY EUGENE MATHIS, JR., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 12-0386-WS-N** |
| | ) | |
| **NATIONSTAR MORTGAGE, LTD.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the Court on the defendants' motion for judgment on the pleadings. (Doc. 20). The parties have filed briefs in support of their respective positions, (Docs. 21, 26, 31), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be denied.

## BACKGROUND

According to the amended complaint, (Doc. 18), the plaintiffs executed a mortgage covering their primary residence. Defendant Federal National Mortgage Association ("Fannie Mae") later acquired ownership of the loan. Servicing of the loan was at some point transferred to defendant Nationstar Mortgage, LLC ("Nationstar"). The plaintiffs applied for a loan modification under the Home Affordable Modification Program ("HAMP"), dealing with Nationstar after it became the servicer. HAMP is a product of the Emergency Economic Stabilization Act of 2008 ("EESA").

According to the amended complaint, Nationstar instructed the plaintiffs to stop making mortgage payments while it evaluated the loan modification request, and the plaintiffs did so. Nationstar later told the plaintiffs they had been approved for a Trial Period Plan ("TPP"), under which they would make lower monthly payments on a trial

basis.  The plaintiffs successfully completed the trial period, and Nationstar sent a permanent modification agreement, which the plaintiffs signed and returned to Nationstar.  The plaintiffs then continued making the lowered monthly payments in accordance with the modification.  Eventually, Nationstar advised the plaintiffs they had not accepted the offer or had withdrawn their request, though neither was true.  Nationstar then notified the plaintiffs they were in default and that the loan was $11,057.97 in arrears.  The loan was not in default, and the figure provided by Nationstar did not give the plaintiffs credit for the lowered payments they had been making for several months.  The plaintiffs learned that Nationstar was holding these funds in a suspense account, but Nationstar refused either to refund these monies or apply them to the claimed deficiency.  During this period, Nationstar failed to pay the homeowner's insurance premium out of escrow funds it held, resulting in cancelation of the policy.  Nationstar received assignment of the deed of trust, which transferred the mortgage to Nationstar.  Nationstar did not acquire ownership of the debt, but Nationstar through its counsel falsely represented to the contrary.  Nationstar published foreclosure notices containing various falsehoods, and it then conducted a foreclosure sale, at which Fannie Mae bought the property.  Prior to foreclosure, Nationstar did not provide the plaintiffs the notices and rights to cure granted them by the mortgage, in that the notices contained material misrepresentations.  After foreclosure, the plaintiffs vacated the premises, in reliance on instructions from Fannie Mae and representations from Nationstar that a valid foreclosure sale had occurred.

The amended complaint includes seven claims, each asserted against both defendants:

- Count One          Breach of mortgage agreement
- Count Two          Breach of TPP agreement
- Count Three        Negligence
- Count Four         Wantonness
- Count Five         Wrongful foreclosure

- Count Six          Fraud
- Count Seven        Defamation

The defendants present the following arguments:  (1) the plaintiffs did not satisfy a condition precedent to suit; (2) there is no private cause of action for failure to modify a loan under HAMP; and (3) there is no enforceable contract to modify the plaintiffs' loan. The plaintiffs dispute each of these arguments but also assert that the defendants waived their right to challenge the amended complaint through the vehicle of Rule 12(c).

## DISCUSSION

"Judgment on the  pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. District Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010) (internal quotes omitted).  "We accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Id*.  The Court "need not accept as true, however, conclusory legal allegations made in the complaint." *Andrx Pharmaceuticals, Inc. v. Elan Corp*., 421 F.3d 1227, 1230 n.1 (11th Cir. 2005).

## I.  Timeliness of the Motion.

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The defendants' motion clearly is not untimely under this standard, since trial is set for November 2013.  (Doc. 37).  The plaintiffs, however, point out that the defendants previously filed a motion under Rule 12(b)(6) to dismiss Counts Eight and Nine of the original complaint, and they object that the defendants should have challenged Counts One through Seven at the same time.  (Doc. 26 at 7-10).

The plaintiffs believe their position is supported by Rule 12, but it is not.  Rule 12(g)(2) generally requires that "a party that makes a motion under this rule [i.e., Rule 12] must not make another motion under this rule raising a defense or objection that was

available to the party but omitted from its earlier motion." But, by its terms, Rule 12(g)(2)'s general prohibition on consecutive Rule 12 motions applies "[e]xcept as provided in Rule 12(h)(2) or (3)." Rule 12(h)(2)(B) provides that "[f]ailure to state a claim upon which relief can be granted … may be raised … by a motion under Rule 12(c) …." The instant motion is based on the plaintiffs' asserted failure to state a claim and so is captured by this provision. The only Eleventh Circuit opinion cited by the plaintiffs acknowledges that a Rule 12(c) motion based on failure to state a claim is "not subject to the consolidation requirements of Rule 12(g)." *Skrtich v. Thornton*, 280 F.3d 1295, 1307 n.13 (11th Cir. 2002).[1]

The plaintiffs argue that, under *Skrtich*, a Rule 12(c) motion may be deemed untimely "'if a defendant fails to assert the defense within time limits set by the court or if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes.'" 280 F.3d at 1307 n.13 (quoting *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994)). But it would be impossible for the Court to make such a finding here. The instant motion was filed 43 days after the defendants filed their timely motion to dismiss, 15 days after the plaintiffs moved to moot the motion to dismiss by filing an amended complaint deleting Counts Eight and Nine, two minutes after the defendants filed their timely answer to the amended complaint,[2] and two months before any scheduling order was entered. The motion could not have been more punctual.

---

[1] *See also Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion[, because] Rule 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement."); *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 6-7 (1st Cir. 2007) (it was proper under Rules 12(g) and 12(h)(2) for the trial court to "allo[w] a narrow motion to dismiss and then subsequently allo[w] a broader motion for judgment on the pleadings"). The plaintiffs cite a number of cases for the proposition that consecutive Rule 12 motions are prohibited, but none of them involves a second motion based on failure to state a claim.

[2] A Rule 12(c) motion cannot be filed until "[a]fter the pleadings are closed," that is, until after the defendant files an answer. *Sampson v. Washington Mutual Bank*, 453 Fed. Appx. 863, 865 n.2 (11th Cir. 2011); *accord Healthcare Association, Inc. v. Pataki*, 471 F.3d 87, 94 (2nd Cir. 2006); *Doe v. United States*, 419 F.3d 1058, 1061-62 (9th Cir. 2005); *F.R.C. International, Inc. v. United States*, 278 F.3d 641, 642 (6th Cir. 2002).

4

In summary, the defendants have not waived their ability to present their challenges through the vehicle of Rule 12(c).

## II. Condition Precedent.

The mortgage provides in pertinent  part as follows:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member [sic] of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Doc. 21, Exhibit B, § 20).  Section 15 provides that "[a]ll notices given by Borrower or Lender in connection with this Security Instrument must be in writing."  (*Id.*, § 15).[3]

The defendants describe this written notice requirement as a condition precedent to suit, and the plaintiffs do not disagree with this characterization.  The defendants point out that the amended complaint does not allege that the plaintiffs gave written notice under Section 20, or a reasonable time to take corrective action, before commencing suit. (Doc. 21 at 6).  The plaintiffs were not required to do so, because, "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."  Fed. R. Civ. P. 9(c).  But the amended complaint does not

---

[3] The mortgage is not appended to the amended complaint.  Under Rule 12(d), if the Court considers matters outside the pleadings on a Rule 12(b)(6) or Rule 12(c) motion, the motion must be converted to one for summary judgment.  But there is an exception for a document submitted by the defendant "if the attached document is:  (1) central to the plaintiff's claim; and (2) undisputed."  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). "'Undisputed' in this context means that the authenticity of the document is not challenged."  *Id*. This exception applies to Rule 12(c) motions as much as to Rule 12(b)(6) motions.  *Id*.  The mortgage satisfies these requirements.

allege satisfaction of conditions precedent even generally, so the Court proceeds to examine the parties' positions.

The plaintiffs argue that Section 20 does not require notice prior to foreclosure, only prior to suit. Before suit was filed, however, the defendants foreclosed. Under Alabama law,[4] a foreclosure sale extinguishes the mortgage. Once the mortgage was extinguished, they conclude, the notice requirement was extinguished as well, so that they did not have to give notice prior to filing suit. (Doc. 26 at 18-19).

The defendants first note the plaintiffs' failure to cite any authority accepting their position. (Doc. 31 at 2). True, but the matter is before the Court on the defendants' Rule 12(c) motion, so the burden is on them to show that the notice provision applies despite foreclosure. Calling the plaintiffs' position "nonsensical," (*id.*), does not carry that burden. Nor does citing an unpublished trial court decision, (*id.*), which did not involve Alabama law and which did not address the issue presented herein.

The defendants next assert that the notice provision requires notice, not simply prior to suit, but prior to foreclosure. (Doc. 31 at 2). The only conduct that Section 20 expressly prohibits without prior written notice, however, is the filing of suit, not acquiescence in foreclosure. Whatever textual arguments might exist for construing Section 20 as broadly as the defendants desire, they have not articulated them, and the Court will not do so on their behalf. Simply positing, as do the defendants, that "the very purpose of the notice provision is to allow the lender an opportunity to remedy any potential breaches of the mortgage before a foreclosure sale," (*id.*), is no substitute for analysis and authority, neither of which the defendants offer.

Finally, the defendants argue that the plaintiffs cannot sue for breach of mortgage and simultaneously claim that the notice provision contained in the mortgage has been extinguished, on the grounds that "Alabama law prohibits a person from picking and choosing those provisions in a contract that he wants to apply ...." *Ex parte Southern United Fire Insurance Co.*, 843 So. 2d 151, 156 (Ala. 2002). But the plaintiffs' argument

---

[4] The mortgage identifies Alabama as supplying governing law. (Doc. 21, Exhibit B, § 16).

is not that they can enforce those provisions of the mortgage which they like and ignore others just because they don't like them; their argument is that the notice provision does not apply due to the foreclosure.

While relying on "pick and choose" cases, the defendants' real beef appears to be that it is inconsistent for the plaintiffs to maintain that the extinguishment of the mortgage by foreclosure extinguished the plaintiffs' notice obligation but did not extinguish the plaintiffs' ability to sue for breach of the mortgage.  There is no inconsistency, according to the plaintiffs, because the defendants' violations of their obligations occurred before foreclosure – when the mortgage and its obligations still existed – while a violation of the notice provision could not occur until suit was filed – by which time mortgage and its the notice obligation no longer existed.  (Doc. 26 at 19 n.4).  The defendants do not effectively counter this argument.

In summary, on the limited argument and authority presented, the defendants are not entitled to judgment on the pleadings, in whole or in part, based on failure to satisfy a condition precedent to suit.

## III.  Private Cause of Action.

In *Miller v. Chase Home Finance, LLC*, 677 F.3d 1113 (11th Cir. 2012), the Eleventh Circuit ruled that "[n]either HAMP nor EESA expressly creates a private right of action for borrowers against loan servicers."  *Id*. at 1116.  The Court then "addressed … whether there is an implied private right of action under HAMP."  *Id*.  After engaging in the standard analysis of such issues, the Court "conclude[d] that no such right exists."  *Id*.  The parties agree that *Miller* precludes a federal cause of action under HAMP.  The question is whether, and to what extent, the plaintiffs' state law claims are also precluded.

"Our Constitution provides Congress with the power to preempt state law …." *Georgia Latino Alliance for Human  Rights v. Governor of Georgia*, 691 F.3d 1250, 1262 (11th Cir. 2012).  The defendants, however, expressly disavow any argument that HAMP or EESA preempts the plaintiffs' state law claims.  (Doc. 31 at 9).  Because the defendants reject any preemption argument, and because they do not conduct the heavy

lifting that preemption analysis requires, they cannot obtain judgment on the pleadings based on preemption.

The defendant's argument is that, "[i]f the plaintiff's claims are substantially dependent upon HAMP and its procedures, dismissal is appropriate." (Doc. 31 at 9). The only appellate court known to have expressly evaluated the "not sufficiently independent" argument has soundly rejected it. The trial court in *Wigod v. Wells Fargo Bank*, 2011 WL 250501 (N.D. Ill. 2011), ruled that "'the facts and allegations as pleaded in this case are premised chiefly on the terms and procedures set forth via HAMP and are not sufficiently independent to state a separate state law cause of action for breach of contract.'" *Id.* at \*4 (quoting *Vida v. One West Bank*, 2010 WL 5148473 at \*5 (D. Or. 2010)). On appeal, the Seventh Circuit characterized "[t]his 'end-run' theory" as "built on the novel assumption that where Congress does not create a private right of action for violation of a federal law, no right of action may exist under state law, either." *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 581 (7th Cir. 2012). But, the *Wigod* Court countered, "a state-law claim's incorporation of federal law has never been regarded as disabling, whether the federal law has a private right of action or not." *Id.* at 582. It thus concluded that "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." *Id.* at 581; *see also Cox v. Mortgage Electronic Registration Systems, Inc.*, 685 F.3d 663, 675 n.4 (8th Cir. 2012) (suggesting the trial court's assessment of HAMP preemption "may be questionable" but resolving the appeal on other grounds).

Notably, the *Wigod* Court determined that, "in the absence of any other doctrinal foundation for it [the end-run theory], we see no other way to classify it" than "as a preemption argument." 673 F.3d at 582. This is the standard conception in the Eleventh Circuit as well. *See, e.g., Tectonics, Inc. v. Castle Construction Co.*, 753 F.2d 957, 959 (11th Cir. 1985) (describing the issue as whether, "[i]f Alabama law provides a cause of action and Congress did not provide a private cause of action pursuant to the statute, does the federal law preempt the state law …?"). As noted, however, the defendants eschew a preemption theory, so they are left with no theory at all.

8

The defendants focus on various trial court decisions and make only passing reference to *Miller*.  (Doc. 21 at 14).  Because *Miller* is a decision of the Eleventh Circuit, the Court pays it special attention despite the defendants' failure to do so.

The plaintiff in *Miller* sued when the defendant declined to issue a permanent loan modification under HAMP, raising claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.  *Id*. at 1115.  After concluding that there is no implied right of action under HAMP or its underlying statute, the Eleventh Circuit continued that "Miller therefore lacks standing to pursue his breach of contract, breach of implied duty of good faith and fair dealing, and promissory estoppel claims insofar as they are premised on an alleged breach of Chase's HAMP obligations."  *Id*. at 1116-17.  Such claims could proceed, however, to the extent "independent from Chase's obligations under HAMP."  *Id*. at 1117.  The *Miller* Court did not address *Wigod* or set forth the reasons underlying its ruling.

The plaintiffs suggest this portion of *Miller* is dicta, but that appears debatable.  It is clear, however, that *Miller* does not extend to the fact pattern alleged in the amended complaint.  *Miller* applies when the defendant declines to modify the loan and the plaintiff alleges that the failure to modify violates the defendant's obligations under HAMP.  Those obligations, according to *Miller*, are "to abide by guidelines promulgated by the Secretary when determining a mortgagor's eligibility for a permanent loan modification."  677 F.3d at 1116.  Here, the plaintiffs do not complain of a failure to modify the loan or of a breach of obligations in considering whether to modify a loan.  Instead, they allege that a loan modification agreement was in fact entered but that the defendants have not honored their agreement with the plaintiffs.  *Miller* does not reach such a situation.[5]

In summary, the defendants advance no argument that the plaintiffs' state law causes of action are preempted by federal law; they have articulated no other principle

---

[5] Nor, it appears, do most of the district court opinions on which the defendants rely.  For that matter, neither does the defendants' argument, which, by its terms, is limited to claims "for an alleged *failure to modify* a loan under HAMP."  (Doc. 21 at 9; Doc. 31 at 9 (emphasis added)).

that could justify such a result; and the plaintiffs' allegations are meaningfully different from those in *Miller*.[6]  On the limited argument and authority presented, the defendants are not entitled to judgment on the pleadings, in whole or in part.

## IV.  Contract to Modify.

The amended complaint alleges that the plaintiffs accepted the offer of a permanent loan modification agreement by signing the agreement and sending it to Nationstar.  (Doc. 18, ¶ 17).  The defendants argue that the loan modification agreement required the plaintiffs to return it to Nationstar by June 1, 2011, (Doc. 21 at 16-17), and they note that the amended complaint alleges Nationstar received the executed agreement on June 7, 2011.  (Doc. 18, ¶¶ 17, 22).  They further argue that the agreement provided that the loan would not be modified unless and until the lender signed it, and they deny they ever did so.  (Doc. 21 at 16-17).  The defendants argue that these two circumstances prevented a contract from being formed.

To support their argument, the defendants submit what they identify as the loan modification agreement.  (Doc. 21, Exhibit A).  That document contains the provisions described above, and it does not contain the signature of Nationstar's representative.  However, as discussed in Part II, the Court cannot consider documents beyond the pleadings without converting the motion to one for summary judgment, except for documents that are both central to the plaintiffs' claim and the authenticity of which the

---

[6] The defendants, seeking a home run, call on the Court to dismiss the amended complaint in its entirety, without addressing specific individual allegations that might (or might not) be susceptible to dismissal under *Miller*.  The defendants cannot, by the simple expedient of making a generalized argument, shift to the Court the burden of applying that argument allegation by allegation to find where, if anywhere, it might succeed.

The Court does note, however, that many allegations patently could not be captured by the defendants' proposed rule.  For example, *Miller* makes clear that claims arising "under [the plaintiff's] original loan agreement" are not precluded, 677 F.3d at 1117, and the amended complaint alleges that the defendants failed to apply payments as required by the mortgage, failed to provide opportunity to cure as required by the mortgage, breached the covenant of good faith and fair dealing under the mortgage, and failed to pay insurance premiums as required by the mortgage.  (Doc. 18, ¶ 40).  This listing is not exhaustive.

plaintiffs do not challenge.  *See* note 3, *supra*.  The plaintiffs do challenge the authenticity of Exhibit A, and with good reason.  The actual loan modification agreement was signed by the plaintiffs and returned to Nationstar, (Doc. 18, ¶ 17), but Exhibit A is not signed by the plaintiffs.

Because the plaintiffs challenge the authenticity of Exhibit A, the Court cannot consider it without converting the motion to one for summary judgment.  Neither side has requested the Court to convert the motion, and the Court declines to do so.  Accordingly, Exhibit A will not be considered in resolving the instant motion.  Without Exhibit A, the defendants' argument collapses.

In summary, the defendants are not entitled to judgment on the pleadings for want of an enforceable loan modification agreement.

## CONCLUSION

For the reasons set forth above, the defendants' motion for judgment on the pleadings is **denied**.

DONE and ORDERED this 11th day of December, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE